<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| GREGORY MITCHELL, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 04-4151 (GEB) |
| | : | |
| v. | : | **MEMORANDUM OPINION** |
| | : | |
| JO ANNE B. BARNHART, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

**<u>BROWN, Chief Judge</u>**

This matter comes before the Court upon the appeal of Plaintiff Gregory Mitchell ("Plaintiff") from the final decision of the Commissioner of Social Security ("Commissioner"), determining that Plaintiff was not entitled to supplemental security income ("SSI") under the Social Security Act ("the Act"). This Court, exercising jurisdiction pursuant to 42 U.S.C. § 405(g), and having considered the parties' submissions without oral argument pursuant to Federal Rule of Civil Procedure 78, denies Plaintiff's appeal.

**I.  BACKGROUND**

In this appeal, Plaintiff challenges the Administrative Law Judge's ("ALJ") determination that he is not entitled to disability benefits. Plaintiff was born on August 24, 1959. Prior to the onset of his alleged disabilities, he worked for various companies, all of which involved the lifting and carrying of heavy items. Plaintiff claims that he suffers from back pain, Hepatitis C, and rheumatoid arthritis, which prevented him from performing any substantial gainful work since January 1, 2001.

On September 24, 2001, Plaintiff filed an application for SSI benefits under Title XVI and Title XIX of the Act, alleging disability since January 1, 2001.  R. at 68-71.  The Social Security Administration denied Plaintiff's claim on January 29, 2002.  R. at 19.  Plaintiff submitted a Request for Reconsideration on February 12, 2002.  R. at 25-26.  This request was denied on February 25, 2002.  R. at 27-28.  On March 18, 2002, Plaintiff timely filed a Request for Hearing by ALJ.  R. at 29-30.  On June 17, 2003, ALJ Christopher P. Lee conducted a hearing to determine whether Plaintiff was disabled and thus entitled to benefits.  R. at 206-38.

According to Plaintiff's testimony in the hearing, he injured his back "[b]ack in the eighties" when he fell off a roof.  R. at 223.  He was diagnosed with Hepatitis C in 2001, R. at 216, and developed rheumatoid arthritis in his hands in 2002.  R. at 215.  Plaintiff testified that he feels short-winded and fatigue all the time due to hepatitis.  R. at 216, 234.  He alleged that the diseases have caused constant pain in his low back and liver.  R. at 218-19.  Plaintiff stated that he can only sit from twenty-five to thirty minutes, R. at 219, and stand from ten to fifteen minutes before pain causes numbness in his legs.  R. at 219, 226-27.  Plaintiff further stated that walking more than one block will cause the same problem.  R. at 218, 228.  Plaintiff testified that he also suffers from pain in his hands because of arthritis when he grips objects.  R. at 230.

Plaintiff explained that his back and hand problems have affected his daily life.  R. at 220-22, 225.  According to Plaintiff, he cannot cook or dress himself, and relies on his friend to help him with those activities.  R. at 221.  Plaintiff claimed that he cannot bend down to reach his feet.  R. at 225.  Additionally, Plaintiff asserted that he cannot lift over ten pounds,  R. at 220, and was instructed by his doctors not to lift objects "over 20 or 30 pounds."  R. at 226.

Plaintiff also testified to his illiteracy and drug problems.  R. at 211-12, 231.  He claimed that despite his eighth-grade education, he cannot read or write English.  R. at 211-12, 231.

Plaintiff also admitted that he was a heavy drug user, but quit using drugs two years prior to the hearing. R. at 210.

On June 27, 2003, the ALJ issued a decision denying Plaintiff's SSI at step five of the sequential evaluation process. R. at 8-16. The ALJ's opinion described the evaluation process and summarized all of the evidence in the record. <u>Id.</u> The ALJ then made the following findings:

> 1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 2. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulation 20 CFR § 416.920(b).
>
> 3. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> 4. The [ALJ] finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.
>
> 5. The [ALJ] has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 416.927).
>
> 6. The claimant has the following residual capacity: sit, stand and walk for up to 6 hours each, and lift and carry 25 pounds frequently and 50 pounds occasionally.
>
> 7. The claimant is unable to perform any of his past relevant work (20 CFR § 416.965).
> 8. The claimant is a "younger individual between the ages of 18 and 44" (20 CFR § 416.963).

> 9. The claimant has "a limited education" (20 CFR § 416.964).
>
> 10. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR § 416. 968).
>
> 11. The claimant has the residual functional capacity to perform an essentially full range of medium work (20 CFR § 416. 967).
>
> 12. Based on an exertional capacity for medium work, and the claimant's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 203.25.
>
> 13. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR § 416.920(f)).
>
> 14. The [ALJ] finds that the record in this case is sufficiently developed so as to support the decision.

Id. at 15-16. Plaintiff submitted a letter brief and additional medical evidence to the ALJ on August 27, 2003. R. at 181-205. The ALJ's office, as a courtesy, filed an appeal on behalf of Plaintiff with the Appeals Council on August 29, 2003. R. at 7. The ALJ notified on June 3, 2004 that, after having considered the additional medical information, he would not change his original decision. R. at 6. On June 30, 2004, the Appeals Council denied Plaintiff's Request for Review. Therefore, the ALJ's decision of June 27, 2003 became the final decision of the Commissioner. R. at 3-5. Thereafter, Plaintiff filed the instant action, seeking a review of the Commissioner's denial of disability benefits for the period of January 1, 2001 until June 27, 2003.

## II. DISCUSSION

    A.  <u>Standard of Review for Social Security Appeals</u>

The Commissioner's decisions as to questions of fact are conclusive before a reviewing court if they are supported by "substantial evidence in the record." 42 U.S.C. § 405(g); <u>Knepp v. Apfel</u>, 204 F.3d 78, 83 (3d Cir. 2000). "Substantial evidence" means more than "a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." <u>Plummer v. Apfel</u>, 186 F.3d 422, 427 (3d. Cir 1999) (quoting <u>Ventura v. Shalala</u>, 55 F.3d 900, 901 (3d Cir. 1995)). If the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings, "even if [it] would have decided the factual inquiry differently." <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 38 (3d Cir. 2001) (citing <u>Hartranft v. Apfel</u>, 181 F.3d 358, 360 (3d Cir. 1999)).

The Third Circuit has made it clear "that determination of the existence <u>vel non</u> of substantial evidence is <u>not</u> merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." <u>Kent v. Schweiker</u>, 710 F.2d 110, 114 (3d Cir. 1983) (emphasis in original). The ALJ must analyze all the evidence and explain the weight he has given to probative exhibits. <u>Gober v. Matthews</u>, 574 F.2d 772, 776 (3d Cir. 1978) (internal citations omitted). As the Third Circuit has held, access to the ALJ's reasoning is indeed essential to a meaningful court review. <u>Fargnoli</u>, 247 F.3d at 42. Nevertheless, the district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." <u>Williams v. Sullivan</u>, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing <u>Early v. Heckler</u>, 743 F.2d 1002, 1007 (3d Cir. 1984)).

B. <u>Standard for Awarding Benefits</u>

A plaintiff may not receive benefits under the Act unless he or she first meets statutory insured status requirement. A plaintiff must be disabled, which is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is not under a disability unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

Regulations promulgated under the Act establish a five-step process for an ALJ's evaluation of a claimant's disability. 20 C.F.R. § 404.1520 (2005). In the first step, the ALJ must determine whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). If the claimant is working and the work is a substantial gainful activity, his application for disability benefits is automatically denied. <u>Id.</u> If the claimant is not employed, the ALJ proceeds to step two and determines whether the claimant has a "severe impairment" or "combination of impairments." 20 C.F.R. § 404.1530(a)(4)(ii). A claimant who does not have a "severe impairment" is not disabled. <u>Id.</u> Third, if the impairment is found to be severe, the ALJ determines whether the impairment meets or is equal to those impairments listed in Appendix 1 of this subpart ("the Listing"). 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is conclusively presumed to be disabled, and the evaluation ends. <u>Id.</u>; 20 C.F.R. §

404.1520(d).

If it is determined that the impairment does not meet or equal a listed impairment, the ALJ proceeds to step four, which requires a determination of: (1) the claimant's capabilities despite limitations imposed by an impairment ("residual functional capacity," or "RFC"); and (2) whether those limitations prevent the claimant from returning to work performed in the past ("past relevant work").  20 C.F.R. §404.1520(a)(4)(iv).  If the claimant is found capable of performing his previous work, the claimant is not disabled.  Id.  If the claimant is no longer able to perform his prior line of work, the evaluation must continue to the last step.  The fifth step requires a determination of whether the claimant is capable of adjusting to other work available in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  The ALJ must consider the RFC assessment, together with claimant's age, education and past work experience.  20 C.F.R. § 404.1520(g).  Thus, entitlement to benefits turns on a finding that the claimant is incapable of performing his past work or some other work in the national economy because of his impairments.

The application of these standards involves shifting burdens of proof.  The claimant has the burden of demonstrating both steps one and two, i.e., an absence of present employment and the existence of a medically severe impairment.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).  If the claimant is unable to meet this burden, the process ends and the claimant does not receive benefits.  Id.  If the claimant carries these burdens and demonstrates that the impairments meet or equal those within the Listing, claimant has satisfied his burden of proof and is automatically entitled to benefits.  Id.  If the claimant is not conclusively disabled under the criteria set forth in the Listing, step three is not satisfied, and the claimant must prove "at step four that the impairment prevents h[im] from performing h[is] past work."  Id.  Thus, it is the

claimant's duty to offer evidence of the physical and mental demands of past work and explain why he is unable to perform such work. If the claimant meets this burden, the burden of proof then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." Id. The step five analysis "can be quite fact specific." Burnett v. Commissioner, 220 F.3d 112, 126 (3d Cir. 2000).

      C. The ALJ's Decision Was Based upon Substantial Evidence in the Record

Plaintiff challenges the ALJ's finding that his impairments did not meet or equal the severity of those in the Listing. Pl.'s Br. at 20-24. Additionally, Plaintiff contests the ALJ's determination at step five of the sequential evaluation process that he could perform a full range of medium work. Id. at 25-30. However, substantial evidence in the record demonstrates that the nature of Plaintiff's impairments supports the ALJ's findings.

With respect to the determination at step three that Plaintiff's impairments did not meet or equal a listed impairment, Plaintiff argues that the ALJ failed to consider the result of his MRI indicating his spinal stenosis, which is categorized as one type of impairment in the Listing. Id. at 20-21, 23-24. Plaintiff further argues that he has pseudoclaudication which is also listed in Section 1.00 Muscular Skeletal System of the Listing. Id. at 20. Despite the ALJ's finding that Plaintiff's pseudoclaudication was not supported by the medical evidence in the record, Plaintiff insists that "pseudoclaudication is established by the patient's symptoms rather than medically acceptable imaging . . . ." Id. at 21-22. Additionally, Plaintiff contends that the pain in his back and the numbness in his legs sufficiently meet the Listing requirement of "chronic pain" and "weakness." Id. at 22.

However, the ALJ's decision clearly shows that the ALJ considered Plaintiff's spinal stenosis problem in conjunction with other evidence in the record. The ALJ noted the MRI

8

report conducted by Paterson Community Health Center, indicating "a mild degree of spinal stenosis at L4-5 level, but no other abnormalities." R. at 13. Paterson Health Center also provided a CT scan of Plaintiff's lumbar spine. Id. The CT scan showed that there was "no significant degenerative disc disease or facet osteoarthritis," and that there was a "chronic, bilateral pars interarticularis defect at the L5 level, but no associated spondylolisthesis." Id.

The ALJ also reviewed Plaintiff's various symptoms including the pain and the numbness in his legs, but reached the conclusion that Plaintiff's subjective allegations of the intensity of his pain and other symptoms were not entirely credible in light of the medical reports and doctors' opinions. R. at 14. The ALJ considered Dr. Luis Vassallo's examination. R. at 13. Dr. Vassallo noticed during the examination that Plaintiff "walked without a limp and sat comfortably." Id. This observation was confirmed by the state agency reviewer who determined Plaintiff's ability to "walk and stand for six of eight hours." R. at 14. Contrary to Plaintiff's claim that he could not bend over to reach his feet, Dr. Vassallo observed that Plaintiff could "remove his shoes with both hands and bend his back without difficulty," and that Plaintiff was also able to "walk on tiptoes and heels and to squat completely." R. at 13. The doctor further found that Plaintiff's "straight leg raises were negative, bilaterally, without any back pain," and that Plaintiff exhibited "normal ranges of motion in all joints." Id. According to Dr. Vassallo, Plaintiff had "no neurological deficits in the upper or lower extremities." Id.

Based on this evidence, along with Paterson Health Center's medical reports regarding Plaintiff's mild spinal stenosis problem, the ALJ concluded that Plaintiff's testimony respecting various symptoms was disproportionate to the available evidence in the record. R. at 14. The ALJ's rationale is consistent with the statute and the Regulations. The statute states in relevant part:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability . . . . [T]here must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . .

42 U.S.C.A. § 423(d)(5)(A); see 20 C.F.R. § 404.1529(a). Thus, Plaintiff's subjective complaints of pain and numbness are not dispositive of the matter, and accordingly, the ALJ did not err in reaching his decision.

Furthermore, Plaintiff's allegation that pseudoclaudication can be proven simply by the patient's symptoms contradicts the language of the Listing. Plaintiff relies on the description of pseudoclaudication in Section 1.00 Muscular Skeletal System in support of his assertion. Pl.'s Br. at 21. Specifically, Plaintiff relies on the part of description which states: "Pseudoclaudication differs from peripheral vascular claudication in several ways. Pedal pulses and Doppler examinations are unaffected by Pseudoclaudication." Id. (emphasis added). Plaintiff contends that this language indicates that pseudoclaudication cannot be revealed by certain tests and thus confirms that a patients' symptoms, rather than medical findings, can establish the existence of this condition. Id.

Plaintiff's argument lacks merit. Section 1.00 simply establishes that pseudoclaudication cannot be tested by two particular examinations, namely, pedal pulses and Doppler. This, however, fails to support Plaintiff's assertion that pseudoclaudication is therefore established by his symptoms, as opposed to other applicable medical examinations. In light of the lack of evidence establishing that Plaintiff was diagnosed with pseudoclaudication, the ALJ's dismissal of Plaintiff's allegation of pseudoclaudication was proper.

At step five of the sequential evaluation process, Plaintiff alleges that the ALJ failed to consider evidence of his mental and physical limitations, including his conditions of Hepatitis C and rheumatoid arthritis, and the fact that he is illiterate. Id. at 27-30. Moreover, Plaintiff argues that the ALJ erred by failing to refer him to a consultative examination for IQ testing. Id. at 18, 30. Plaintiff asserts that his limitations prevent him from performing any work in the local or national economy. Id. at 29.

The Court rejects Plaintiff's conclusion that the ALJ erred at step five. The ALJ carefully examined all evidence in the record, including Plaintiff's daily activities, the symptoms and intensity of his pain, his liver and hand problems, the type and side effects of medications, his previous jobs, and his education level. See C.F.R. § 404.1529(c)(3). The ALJ recognized that Plaintiff's pain and hepatitis were severe and thus Plaintiff was unable to perform his past work. R. at 14. The ALJ noted that "there was no marked limitation of motion" or "evidence of impaired function as a result of the hepatitis C." R. at 13. The ALJ acknowledged from the record that both of Plaintiff's hands were capable of "fine and gross manipulations" and that Plaintiff did not need any assistive device for ambulation. R. at 13. The ALJ also took into account the state agency reviewer's report stating that Plaintiff could "lift and carry 25 pounds frequently and up to 50 pounds occasionally." R. at 14.

Additionally, Plaintiff testified during the hearing that he was advised by his physicians to refrain from carrying heavy objects over twenty or thirty pounds. R. at 226. This evidence refutes Plaintiff's claim that he is incapable of lifting over ten pounds. As such, the Court finds that there was substantial evidence supporting the ALJ's conclusion that Plaintiff is capable of performing medium work in the national economy which involves "lifting no more than 50

pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c).

Plaintiff further contends that the ALJ erred in failing to consider Plaintiff's illiteracy. The ALJ, however, evaluated Plaintiff's education level and found that Plaintiff had "a limited education." R. at 16. Moreover, in light of the ALJ's conclusion that Plaintiff could perform medium work in the national economy, literacy is not relevant, since the Medical-Vocational Guidelines in the Regulations mandate that a "younger individual" capable of performing medium work is defined "not disabled," despite his education or literacy level. See 20 C.F.R. Part 404, Subpart P, App. 2, Table No. 3. Therefore, the ALJ's decision regarding Plaintiff's education was appropriate. Accordingly, because substantial evidence in the record established that Plaintiff was not disabled, the ALJ was not required to refer Plaintiff to a consultative examination for I.Q. testing.

Lastly, Plaintiff argues that drug addiction should not be a contributing factor in the determination of his disability. Pl.'s Br. at 31. Because the ALJ did not use Plaintiff's drug addiction as a basis to reach his decision, this argument likewise fails.

Accordingly, Plaintiff fails to establish that the ALJ's decision is unsupported by substantial evidence. Therefore, the Court denies Plaintiff's appeal and affirms the ALJ's decision.

## III. CONCLUSION

      For the reasons stated herein, Plaintiff appeal is denied. An appropriate form of Order accompanies this Memorandum Opinion.


Dated: August 3, 2006


                                                    s/ Garrett E. Brown, Jr.
                                              GARRETT E. BROWN, JR., U.S.D.J.